UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In Re:

RONALD S. MIGA AND                                              Chapter 7
DIANE M. MIGA,                                                  Case No.: 09-61888
                Debtor.
_____

In Re:

EDWARD J. ROZANSKI,                                             Adv. Pro. No.: 09-80066

                Plaintiff,

vs.

RONALD S. MIGA AND
DIANE M. MIGA,

                Defendants.
_____

APPEARANCES:

RICHARD E. KAPLAN, ESQ.
*Attorney for Plaintiff*
2626 Sunset Avenue
Utica, New York 13502

FELT EVANS, LLP                                                 EDWARD D. EARL, ESQ.
*Attorneys for Debtors-Defendants*
4–6 North Park Row
Clinton, New York 13323

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff Edward J. Rozanski ("Plaintiff") commenced the above-referenced adversary proceeding before this Court to determine the dischargeability of the debt owed to him by Debtors-Defendants Ronald S. and Diane M. Miga (collectively, "Debtors" or "Defendants"),

pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6).[1]  Specifically, Plaintiff's § 523(a)(2)(A) claim is advanced solely against Debtor Ronald S. Miga ("Ronald"), for the reason that it is premised upon his alleged commission of false pretenses, false representations, or actual fraud, while Plaintiff's § 523(a)(6) claim is directed against both Debtors for their alleged joint infliction of willful and malicious injury to Plaintiff and/or Plaintiff's property.  ( Pl.'s Compl., filed Sept. 29, 2009, ECF Adv. No. 1 ("Complaint") (Ex. 1)).  Debtors answered the Complaint in this action and raised several affirmative defenses, including, but not limited to, the statute of frauds. (Defs.' Answer, filed Oct. 26, 2009, ECF Adv. No. 6 (Ex. 2)).  Debtors concede that they owe Plaintiff $25,000, but as developed further herein, the parties' recollections and accounts of how the debt came into existence are vastly different.

This matter came to trial on May 24, 2010.  Having now considered the pleadings, the evidence, the trial testimony, the parties' post-trial memoranda, and applicable law, this Memorandum-Decision and Order constitutes the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052, in full and final resolution of this dispute.

## JURISDICTION

The Court has jurisdiction over the parties and subject matter of this core adversary proceeding pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(I), and 1334(b).

## FACTS

The most pertinent undisputed material facts in this matter are that (1) Plaintiff gave Ronald a cashier's check in the amount of $25,000 on July 24, 2008 (the "Check") (Compl., Ex. A), (2) Ronald negotiated and deposited the Check into the corporate bank account of Miga Auto

---

[1] Unless otherwise indicated, all statutory references herein are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2010).

Sales, Inc. ("Miga Auto") on the same date, (3) other than a copy of this Check, no other documentation exists to memorialize the parties' agreement with respect to the nature or purpose of the July 2008 transaction (the "Transaction"), and (4) Plaintiff received nothing in return from Debtors.

At trial, the Court heard testimony from both Plaintiff and Ronald, each of whom told very different and seemingly irreconcilable stories regarding why Plaintiff delivered the Check to Ronald. It is thus very difficult to piece together a credible account of what actually transpired between the parties, and the Court did not find one party's testimony to be more credible than the other party's testimony. Accordingly, the Court will summarize the parties' respective stories, while mindful of the fact that it is Plaintiff's burden to prove that the facts are as he alleges.

Debtors, as the sole shareholders and officers, owned and operated Miga Auto at the time of the Transaction. (Tr. at 44–45.) Miga Auto was located at 9 Clinton Street, New York Mills, New York. The business engaged in the wholesale and retail sale of automobiles. Miga Auto purchased used vehicles from dealers and through auctions, refurbished the vehicles, and then sold them either to private parties or through subsequent auctions. (*Id.* at 46–48.)

According to Plaintiff, he delivered the Check to Ronald with specific instructions for Ronald to use the monies to purchase two vehicles for Plaintiff at an auction scheduled to take place in Waverly, New York on July 25, 2008. (*Id.* at 18–19.) Plaintiff did not give Ronald detailed instructions regarding the make, year, color, condition, or mileage of the vehicles he wanted, but rather advised Ronald that he wanted Ronald to purchase on his behalf a four-wheel drive vehicle and a van. (*Id.* at 27.) He did not plan on attending the auction with Ronald. (*Id.*) Plaintiff testified that when he met Ronald after the auction date had passed to take delivery of or inquire about the vehicles, Ronald initially told him that he was unable to purchase the types of

vehicles that Plaintiff wanted on July 25, 2008.  Plaintiff further testified that, following that conversation, Ronald evaded Plaintiff until Plaintiff located him on the premises of Miga Auto to again question him about the vehicles.  (*Id.* at 21.)  Upon learning that Ronald had not purchased the vehicles at the Waverly auction or at any subsequent auction, Plaintiff demanded Ronald return the $25,000.  Debtors' failure to return the funds to Plaintiff caused Plaintiff to file a state court lawsuit on December 22, 2008, wherein Plaintiff sought judgment on the ground of conversion against both Ronald and Miga Auto (the "State Court Action").  (Ex. 3.)  As they have done in the adversary proceeding *sub judice*, Ronald and Miga Auto answered and asserted that the $25,000 payment from Plaintiff to Ronald was intended by Plaintiff and accepted by Miga Auto as a loan.  (Ex. 4.)  Plaintiff testified that although he had loaned Debtors money in the past, he had not done so within the last twenty years.  (Tr. at 23.)

Contrary to Plaintiff's testimony, testified that the Transaction was in fact a loan.  (*Id* at 49.)  He insisted that he called Plaintiff on July 24, 2008, and asked him to meet at Debtors' home located at 30 Elm Street, New York Mills, New York.  During that meeting, Ronald said he asked Plaintiff if he could borrow $50,000 to $75,000 because he needed the money for his financially troubled business.  Ronald further testified that Plaintiff returned to Debtors' home that afternoon and gave him $25,000, but that the parties never discussed the purchase of a vehicle or loan repayment terms.  (*Id.* at 50.)  According to Ronald, Plaintiff had purchased vehicles from him in the past (*id.* at 53–54), but that was not the arrangement on this particular occasion.  Debtors' contention that the Transaction was a loan is buttressed by the fact that the parties' shared a close personal relationship.  In fact, Plaintiff and Ronald were lifelong friends and, according to both parties, they had been best friends since childhood.  (*Id.* at 15–16, 53.)

Ronald further explained that he told Plaintiff he could use the money because his business was "on the downside," and that Miga Auto was faltering due to the economy and nearby road construction on the main highway leading to the business premises. (*Id.* at 58.) During the course of his testimony, Ronald explained that Debtors experienced both personal and corporate financial difficulties that forced Debtors to close Miga Auto on or about August 31, 2008. (*Id.* at 83.) Ronald was questioned at length by opposing counsel about the actions taken by Debtors in both their individual and corporate capacities between 2005 and 2008 to countenance the same and to try to save Miga Auto, a business in connection with which Debtors had become personal guarantors. These included, but were not limited to, multiple transactions with Manufacturers and Traders Trust Company ("M&T Bank"), refinancing of personal and business debt, repayment of their home mortgage debt, securing a home equity line of credit mortgage from KeyBank National Association ("KeyBank"), loans made to Miga Auto or cash infused into Miga Auto as reported on personal and corporate income tax returns, and the short sale of Miga Auto's real property. Because these transactions are relied upon by Plaintiff as being both improper and instrumental to his case, summary timelines and descriptions of these transactions as set forth in Debtors' Post-Trial Memorandum are reproduced without alteration below:

**TABLE 1**

**CORPORATE FINANCING OF MIGA AUTO SALES BY M&T BANK**

|  | M&T Closing at Melvin & Melvin in Syracuse, New York |
|---|---|
| August 31, 2005 | $198,000 consolidation mortgage<br>9 Clinton Street<br>(Exhibit 25) |
| August 31, 2005 | $350,000 commercial line of credit mortgage<br>9 Clinton Street and grid note<br>(Exhibit 26) |
| August 31, 2005 | $50,000 collateral mortgage on 30 Elm Street secured |

|                | Closing memo (Exhibit 24)                                                                                                              |
|----------------|----------------------------------------------------------------------------------------------------------------------------------------|
|                | Mortgage (Exhibit 22)                                                                                                                  |
| April 10, 2008 | $346,000 M&T amended and restated term note secured by $350,000 mortgage 9 Clinton Street (Exhibit 23, pp. 181–184)                   |
| April 10, 2008 | $50,000 amended and restated M&T term note - replaced $50,000 revolving demand note dated June 29, 2006 (Exhibit 32)                  |
|                | Abstract entries for Miga Auto Sales, Inc. premises at 9 Clinton Street, New York Mills (Exhibit 27)                                   |

(Defs.' Post-Trial Mem. at 6, ECF Adv. No. 24.)

## TABLE 2

## MIGA HOME MORTGAGE LOANS THROUGH M&T BANK AND KEY BANK

| April 31, 2005    | M&T $50,000 mortgage on Elm Street                                                                              | Exhibit 22 (pp. 143–144) |
|-------------------|-----------------------------------------------------------------------------------------------------------------|--------------------------|
| February 28, 2008 | M&T Bank payoff statement for $50,000 mortgage                                                                  | Exhibit 29               |
| March 3, 2008     | Key Bank HELOC $150,000                                                                                         | Exhibit 8 (pp. 102–107)  |
| March 7, 2008     | Key Bank transmittal of payment to M&T on $50,000 Elm Street recorded in Oneida County Clerk's Office           | Exhibit 8 (p. 108)       |
|                   | Key Bank disbursement sheet                                                                                     | Exhibit 30               |
| February 11, 2009 | Discharge of M&T $50,000 mortgage on 30 Elm Street recorded in Oneida County Clerk's Office                     | Exhibit 31               |
|                   | Abstract entries for Defendants['] real property at 30 Elm Street, New York Mills                               | Exhibit 28               |

(*Id.* at 7.)

## TABLE 3

## FORECLOSURE ACTION BY M&T BANK AND
## SHORT SALE OF CORPORATE PROPERTY

| December 24, 2009 | Motion to lift stay to permit | Exhibit 23 |

Case 09-80066-6-dd    Doc 26    Filed 01/21/11    Entered 01/21/11 12:15:19    Desc Main
                  Document      Page 7 of 13

7


|  | foreclosure of $350,000 mortgage on 9 Clinton Place, New York Mills against defendant, Ronald Miga |  |
|---|---|---|
| February 10, 2010 | Order lifting stay | Exhibit 9 |
| March 9, 2010 | Corporate and shareholder resolutions authorizing sale to Antonio Cristiano | Exhibits 10 and 11 |
| March 9, 2010 | Deeds from Ronald S. Miga and Miga Auto Sales to Antonio Cristiano | Exhibits 12 and 13 |
| March 12, 2010 | Satisfactions by M&T Bank of the $198,000 and $350,000 mortgages on 9 Clinton Street, New York Mills | Exhibits 14 and 15 |

(*Id.* at 8.)  The exhibits referenced therein were jointly admitted into evidence.

As the parties are fully familiar with the factual background underpinning the numerous transactions outlined in the tables above, the relevance of which is highly disputed, the Court will not now recite with greater specificity the intricate details of Debtors' dealings with M&T Bank and KeyBank.  For the reasons that follow, the Court reaches the inescapable conclusion that they are immaterial and irrelevant to its determination of Plaintiff's § 523 causes of action now before it.

**ARGUMENTS**

If the Court begins with Plaintiff's Complaint, it understands Plaintiff's allegations to be that (1) "[Ronald] obtained $25,000 from Plaintiff under the false representation and false pretenses that he would use the money to purchase two vehicles for the Plaintiff," (Compl. ¶ 11), and (2) Debtors, through a series of mortgage and other transactions outlined above, "improperly decreased the monies available to both [their] personal creditors . . . [and the creditors of] Miga Auto," (*id.* ¶ 20).[2]  Plaintiff's first theory for nondischargeability is straightforward under §

---

[2] Throughout the course of this proceeding, Plaintiff has also made reference to certain allegedly false and/or misleading statements made by Debtors in their bankruptcy petition and schedules.  (*See* Tr. at 4; Pl.'s Br. at 2, ECF Adv. No. 25.)  The Court will not consider these allegations, however, because Plaintiff has not brought a cause of action under 11 U.S.C. § 727(a)(4)(A).  *See* 11 U.S.C. § 727(a)(4)(A) (2010) (providing for the denial of discharge upon a showing that "the debtor, knowingly and fraudulently, in or in connection with the case, made a false oath or account.").

523(a)(2)(A). The same cannot be said, however, for Plaintiff's second theory under § 523(a)(6). Turning to Plaintiff's post-trial memorandum for clarification, Plaintiff asserts that his § 523(a)(6) cause of action is supported by the fact that Debtors took a series of actions that "improperly decreased the monies available to both [their] personal creditors [and to the creditors of] Miga Auto." (Pl.'s Br. at 7.) Plaintiff argues that their acts, when viewed together, "improperly impaired the ability of . . . Plaintiff to be made whole from the assets of [Debtors] or their corporation," such that Debtors "have been unjustly enriched" at their creditors' expense. (*Id.* at 13.)

In defense of Plaintiff's § 523(a)(2)(A) cause of action, Debtors argue that there is no proof that Ronald ever agreed to purchase vehicles for Plaintiff, or that Ronald ever intended to deceive Plaintiff when he asked to borrow money. Debtors contend that there was never a false representation made, contrived or misleading scheme derived, or actual fraud committed in order to induce Plaintiff to give Debtors $25,000. Turning to Plaintiff's § 523(a)(6) cause of action, Debtors argue that even if the mortgage, financial, and other transactions were somehow probative of Debtors' alleged aim to cause willful and malicious injury to Plaintiff's financial interest or property, all of the complained of acts occurred prior in time to the Transaction, thus Plaintiff did not have an interest to protect and cannot now rely on the same to show that Debtors deliberately or intentionally injured him financially when they took any action involving either M&T Bank or KeyBank.

## DISCUSSION

### I.    The Applicable Evidentiary Standard

The controlling evidentiary standard for § 523 exceptions to discharge is well-settled. It is incumbent upon the moving creditor in a nondischargeability proceeding to prove by a

preponderance of the evidence that his debt is exempt from discharge under § 523. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). In recognition of the fact that "[t]he consequences to a debtor whose obligations are not discharged are considerable," *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 66 (2d Cir. 2007), exceptions to discharge must be narrowly construed and genuine doubts must be resolved in favor of the debtor, *id.* (citing *In re Renshaw*, 222 F.3d 82, 86 (2d Cir. 2000); *In re Hayes*, 183 F.3d 162, 167 (2d Cir. 1999)).

## II.   Section 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt "for money . . . to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement affecting the debtor's . . . financial condition." 11 U.S.C. § 523(a)(2)(A) (2010). Although the three terms used in this section embody different concepts, *Varble v. Chase (In re Chase)*, 372 B.R. 133, 136 (Bankr. S.D.N.Y. 2007), they share the common requirement of knowledge or fraudulent intent on the part of the debtor. "It is insufficient to show [merely] that a debtor left unfulfilled a prior representation or promise." *Dawley v. Gould (In re Gould)*, 73 B.R. 225, 227 (Bankr. N.D.N.Y. 1987). Accordingly, the Court must focus upon the acts of Debtors and the context in which they occurred.

Here, Plaintiff relies upon the grounds of false pretenses and false representation. The difference between the two is that the former involves implied misrepresentations, while the latter deals with express misrepresentations, whether oral or written. *Strominger v. Giquinto (In re Giquinto)*, 388 B.R. 152, 174 (Bankr. E.D. Pa. 2008) (citing cases). In order to establish that a debt is nondischargeable as one for money obtained by false pretenses, the creditor must prove the following: (1) an implied misrepresentation or conduct by the debtor; (2) promoted knowingly and willingly by the debtor; (3) resulting in a contrived and misleading

understanding of the transaction by the creditor; (4) such that the creditor was wrongfully induced to advance money to the debtor. *In re Chase*, 372 B.R. at 137 (citing *Sandak v. Dobrayel (In re Dobrayel)*, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002) (citing BLACK'S LAW DICTIONARY at 619 (7th ed. 1999)). Stated differently, false pretenses is "the practice of any 'scam, scheme, subterfuge, artifice, deceit, or chicanery in the accomplishment of an unlawful objective' on behalf of the [debtor]." *Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 397 (Bankr. E.D.N.Y. 2005) (quoting *In re Bozzano*, 173 B.R. 990, 993 (Bankr. M.D.N.C. 1994)). To make out a *prima facie* case for false representation, a creditor must prove the following: (1) the debtor made a false representation; (2) the debtor knew the representation was false at the time it was made; (3) the representation was made with the intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor was injured by the representation and suffered damages as a result. *Eurocrafters, Ltd. v. Vicedomine*, 2005 U.S. Dist. LEXIS 10079, at *15 (N.D.N.Y. May 18, 2005) (citing cases), *aff'd* 2006 U.S. App. LEXIS 13244 (2d Cir. May 25, 2006).

First and foremost, "[f]undamental to any claim under § 523(a)(2)(A) is the occurrence of some misrepresentation." *FCC Nat'l Bank v. Lokotnicki*, 232 B.R. 583, 587 (Bankr. W.D.N.Y. 1999). Further, the misrepresentation must precede the debt sought to be nondischargeable and in issue.[3] In the present case, Plaintiff has not demonstrated by a preponderance of the evidence that Ronald obtained the Check by virtue of misrepresentation. Given that the parties' presented markedly different scenarios of what transpired on the date of the Transaction, and neither party has documentary evidence related to the Transaction itself so as to substantiate their version of events, the Court's determination rests solely on credibility. Plaintiff's

---

[3] For this reason, the documentary evidence submitted by Plaintiff, all of which relates to events that occurred *after* the Transaction, is neither relevant nor material to the Court's determination.

testimony is counterbalanced by Ronald's testimony and there is nothing in the record that causes the Court to favor one party's testimony over the other's. In fact, given the parties' longstanding friendship, and the fact that Plaintiff had rendered financial assistance to Ronald in the past, it is entirely plausible that Ronald would have reached out to Plaintiff at a time when he was attempting to save or revive Debtors' business. With this in mind, the Court must conclude that Plaintiff has not met his evidentiary burden to establish that Ronald obtained the $25,000 by false pretenses or false representation under § 523(a)(6). *See, e.g., New Midland Assocs.*, 247 B.R. 877, 883 (Bankr. S.D. Fla. 2000) ("Preponderance means that the existence of a fact is simply more likely than not.").

### III.     Section 523(a)(6)

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (2010). The terms "willful" and "malicious" are treated as separate elements and both must be satisfied in order for the creditor to prevail. *Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 625 (Bankr. N.D.N.Y. 2009) (citing cases), *aff'd* 2009 U.S. Dist. LEXIS 116245 (N.D.N.Y. Dec. 14, 2009). The Supreme Court has narrowly interpreted the willfulness element, such that "nondischargeability [of a debt] takes a deliberate or intentional injury, not merely a deliberate act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). The Second Circuit Court of Appeals has defined malicious to mean "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 88 (2d Cir. 1996) (citations omitted). Given these ground rules, it is clear that "[w]illful and malicious conversion . . . falls within § 523(a)(6)." *United Orient Bank v. Green*, 215 B.R. 916, 928 (S.D.N.Y. 1997) (internal citations and quotation marks omitted). Not

all unlawful conversions of property, however, will give rise to relief under § 523(a)(6), because unlike a tort action, bankruptcy law requires a culpable state of mind and a specific motivation by the debtor in order for the conversion to be actionable. *Bd. of Tr., Adirondack Carpenters Pension Fund v. Parker (In re Parker)*, 388 B.R. 11, 22 (Bankr. N.D.N.Y. 2008).

On the present record, and for the same reasons expressed herein in connection with the Court's dismissal of Plaintiff's § 523(a)(2)(A) cause of action, the Court cannot find that Debtors possessed the requisite motivation to inflict financial harm upon Plaintiff by converting Plaintiff's $25,000 for Debtors' own use. *See Orbis, Inc. v. Gallo (In re Gallo)*, 2010 Bankr. LEXIS 1219, at *11–12 (Bankr. W.D.N.C. Apr. 1, 2010) (willful element of § 523(a)(6) requires a showing of either an objective substantial certainty of harm or a subjective motive to cause harm). Even if the Court were to consider as relevant the M&T Bank activity that occurred post-Transaction, namely the discharge by M&T of its $50,000 mortgage that was secured by Debtors' homestead, which occurred on February 11, 2009, or any of the other noted transactions for that matter, it would not be enough for Plaintiff to satisfy the first element of willfulness, which is fatal to Plaintiff's § 523(a)(6) cause of action.

Plaintiff's theory in the simplest of terms is that Debtors wrongfully converted the $25,000 belonging to him, without his consent or authorization, by funneling the same into their business and/or home. Based on Ronald's testimony, however, he advised Plaintiff when he asked to borrow the funds that he needed the money because Miga Auto was struggling financially. It is therefore entirely plausible that Debtors in fact understood the Transaction to be a loan, subject to future repayment, but that such repayment proved to be impossible in the face of their continually worsening financial state. If Ronald's version of the parties' conversation on the date of the Transaction is in fact true, then Debtors' would have been authorized to use the

$25,000 to pay down or extinguish debt or to restructure their obligations. Where, as here, the Court has any doubts with respect to the evidence, they must be resolved in the debtor's favor. *White's Lumber, Inc. v. Barksdale (In re Barksdale)*, 438 B.R. 25, 26 (Bankr. N.D.N.Y. 2010) (citing *In re Hyman*, 502 F.3d 61, 66 (2d Cir. 2007) (citing cases)).

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED, that Plaintiff's Complaint against Debtors seeking a determination of nondischargeability under § 523(a)(2)(A) and/or (a)(6) is dismissed in its entirety.

IT IS SO ORDERED.

Dated at Utica, New York
This 21st day of January 2011

/s/DIANE DAVIS_____
DIANE DAVIS
United States Bankruptcy Judge